IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| ROBERT E. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:10-cv-00088 |
| v. ) | |
| ) | Judge Nixon |
| CAROLYN W. COLVIN, ) | Magistrate Judge Griffin |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Robert E. Davis' Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 17), filed with a Brief in Support (Doc. No. 18). Magistrate Judge Griffin issued a Report and Recommendation ("Report") recommending that Plaintiff's Motion be granted. (Doc. No. 30 at 35.) For the reasons stated below, the Court **ADOPTS** the Report, **GRANTS** Plaintiff's Motion, **REVERSES** the administrative decision, and **REMANDS** this case to the Commissioner for calculation of benefits. The Clerk of the Court is **DIRECTED** to close the case.

### I. BACKGROUND[1]

To be eligible for DIB and SSI, a claimant has the ultimate burden to establish he or she is entitled to benefits by proving his or her

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

[1] The Court adopts the facts and procedural history as stated in Magistrate Judge Griffin's Report. (Doc. No. 30 at 1–19.) The Court restates the facts and procedural history below only as necessary to the resolution of the issues.

1

42 U.S.C. § 423(d)(1)(A) (2012); *see Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity ("RFC") (e.g., what the claimant can still do despite his or her limitations); if the claimant has the RFC to do his or her past relevant work, the claimant is not disabled. If the claimant is not able to do any past relevant work or does not have any past relevant work, the analysis proceeds to step five.

5. At the last step it must be determined whether the claimant is able to do any other work. At this step, the Commissioner must provide evidence of the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and RFC.

20 C.F.R. § 416.920(a)(4) (2014); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Here, Administrative Law Judge ("ALJ") Joan A. Lawrence found under the five-step analysis that (1) Plaintiff had not engaged in substantial gainful activity since August 24, 2004,

---

[2] The Listing of Impairments is found at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2014).

the alleged onset date; (2) Plaintiff has the following severe impairments: "degenerative disc disease, mild mental retardation, anxiety disorder, not otherwise specified, cannabis abuse, obesity, alcohol dependence in remission, and left eye blindness"; (3) Plaintiff did not have an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) Plaintiff has the RFC "to perform medium work . . . except that he will be precluded from work requiring literacy, binocular vision, and depth perception. He can perform simple, unskilled work. He also has little ability to read or write . . . . The claimant is unable to perform any past relevant work"; and (5) considering that the claimant is a "younger individual," illiterate and able to communicate in English, and has performed unskilled work in the past, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 14–23.) ALJ Lawrence concluded that Davis had not been under a disability at any time through the date of her decision. (Tr. 24.)

Davis filed a Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 17) and a Brief in Support (Doc. No. 18) on February 11, 2011, contending the ALJ erred at step three in the analysis by finding he does not meet or equal listed impairment 12.05(C), Intellectual Disability. Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition to Plaintiff's Motion. (Doc. No. 25.) Magistrate Judge Griffin issued a Report and Recommendation ("Report") finding Davis meets listing 12.05(C), and recommending that Plaintiff's Motion be granted, the decision of the Social Security Administration be reversed, and benefits be awarded. (Doc. No. 30 at 35.) The Commissioner filed an Objection to the Report. (Doc. No. 32.)

## II. STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). However, Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security

3

as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2012). Therefore, the Court's review is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions than the ALJ as to the plaintiff's claim on the merits, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. OBJECTION

The Commissioner objects to Magistrate Judge Griffin's Report, contending that substantial evidence supports the ALJ's conclusion that Davis does not meet listing 12.05(C), Intellectual Disability. (Doc. No. 32 at 1.) Listing 12.05(C) requires Plaintiff to provide evidence

4

of (1) "A valid verbal, performance, or full scale IQ of 60 through 70," (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function," and (3) "significantly subaverage general intellectual functioning" and (4) "deficits in adaptive functioning," both of which must have begun before age twenty-two. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05; *accord Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). The Commissioner concedes that Davis meets the first three elements of the listing. (*See* Doc. Nos. 30, 32.) However, according to the Commissioner, the ALJ's determination that Davis did not demonstrate deficits in adaptive functioning consistent with the listing, and subsequent rejection of Davis' IQ scores as lower than his adaptive functioning would suggest, are supported by substantial evidence, thus the Magistrate Judge's Report should be rejected.

First, as Magistrate Judge Griffin noted, Listing 12.05(C) does not qualify element four in any way; the claimant simply must demonstrate "deficits in adaptive functioning." (Doc. No. 30 at 33.) *See also* Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018-01, 20,022 (Apr. 24, 2002) (declining to adopt more specific definition of deficits in adaptive functioning). However, "deficits in adaptive functioning" is an element of the DSM-V definition of intellectual disability, as well as the definitions espoused by all other relevant professional organizations. To diagnose a claimant with a mild intellectual disability, the medical source must first determine the claimant has deficits in adaptive functioning consistent with a professional organization's definition of intellectual disability. *See infra*; *Durden v. Astrue*, 586 F. Supp. 2d 828, 833 (S.D. Tex. 2008) (surveying professional organizations' definitions). Davis has been diagnosed by three separate medical sources with a mild intellectual disability: psychologist Winston Rutledge in 1974 (Tr. 159, 161), Jerell Killian in 2007 (Tr. 375), and

5

Stephen Hardison in 2008 (Tr. 402). Accordingly, three medical sources have determined that Davis demonstrates deficits in adaptive functioning.

Not only have three medical sources found that Davis has deficits in adaptive functioning—in other words, that Davis meets the fourth element of the listing—but Killian also explicitly determined that Davis' IQ score was consistent with his level of adaptive functioning. (Tr. 374.) The ALJ disagreed, disregarding Davis' IQ scores because, in her estimation, Davis' adaptive functioning was not consistent with his low scores. (Tr. 19.) However, under the Social Security Administration's own rules, a medical consultant or psychological consultant must "affirm that adaptive functioning is consistent with IQ test results." SSA Program Operations Manual System DI24515.056(D)(2) Evaluation of Specific Issues—Mental Disorders—Determining Medical Equivalence (2012) [hereinafter POMS DI24515.056]. The ALJ may not simply substitute her own judgment for that of a medical source where, as here, the POMS makes the "judgment of an MC/PC [medical consultant or psychological consultant] *necessary*" to an assessment of adaptive functioning. *Id.* (emphasis added).[3] Instead, the ALJ must consider Killian's opinion according to "the examining relationship (or lack thereof), specialization, consistency, and supportability" in determining how it should be weighed, and the ALJ's ultimate decision as to the plaintiff's disability must be supported by substantial evidence in the record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013) (citing 20 C.F.R. § 404.1527(c)).

Adaptive functioning refers to "how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background" and accounts for "adaptive reasoning in three domains: conceptual,

---

[3] The Court notes that Rutledge's evaluations do not explicitly mention adaptive functioning (Tr. 159–61) and Hardison did not assess Davis' adaptive skills (Tr. 403 (noting "assessment of adaptive skills was not requested")).

6

social, and practical." *Diagnostic and Statistical Manual of Mental Disorders* 37 (5th ed. 2013) ("DSM-V").[4] A person demonstrates deficits in adaptive functioning consistent with intellectual disability "when at least one domain of adaptive functioning . . . is sufficiently impaired that ongoing support is needed in order for the person to perform adequately in one or more life settings at school, at work, at home, or in the community." DSM-V at 38; *see, e.g., Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 463 (6th Cir. 2012) (graduating high school and mothering not inconsistent with mild intellectual disability where Plaintiff had individual education plan and parenting assistance); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007). If a plaintiff's adaptive functioning is consistent with the above descriptions, his deficits in adaptive functioning are consistent with the requirements of Listing 12.05(C), and the ALJ's decision to disregard the plaintiff's IQ scores based on such functioning is not supported by substantial evidence. *Dragon*, 470 F. App'x at 463; *see also Brown*, 948 F.2d at 270.

In support of her objection, the Commissioner first argues the Magistrate Judge misinterpreted the import of Davis' work history: the Commissioner contends Magistrate Judge Griffin erred because Davis' history of consistent employment shows he did not have deficits in adaptive functioning. (Doc. No. 32 at 2.) The Magistrate Judge determined Davis' work history showed he "worked consistently, albeit at a number of different jobs, from 1984 to 2004," but that these jobs were all "heavy, unskilled jobs of limited complexity," and therefore his work history was consistent with a finding of deficits in adaptive functioning under 12.05(C). (Doc. No. 30 at 31–32.)

---

[4] "The definition of [intellectual disability] we use in our listings is consistent with, if not identical to, the definitions of [intellectual disability] used by the leading professional organizations." Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. at 20,022; *see Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268, 270 (6th Cir. 1991) (12.05(C) tracks DSM listing for mild intellectual disability).

7

For an individual with a mild intellectual disability, "competitive employment is often seen in jobs that do not emphasize conceptual skills," and support is needed "to learn to perform a skilled vocation competently." DSM-V at 34. For individuals with moderate intellectual disability, "[i]ndependent employment in jobs that require limited conceptual and communication skills can be achieved, but considerable support from . . . others is needed to manage social expectations, job complexities, and ancillary responsibilities such as scheduling, transportation, health benefits, and money management." DSM-V at 35; *Brown*, 948 F.2d at 270 (finding that individuals with mild intellectual disability "usually achieve social and vocational skills adequate for minimum self-support, but may need guidance and assistance"). Thus, courts have found claimants who perform "semiskilled" work or "complex tasks" do not demonstrate deficits in adaptive functioning. *See, e.g., Carmack v. Barnhart*, 147 F. App'x 557, 560 (6th Cir. 2005) (holding that work history of business ownership, bookkeeping, and court reporting inconsistent with finding of mild intellectual disability because history showed Plaintiff had not manifested deficits in adaptive functioning); *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872–73 (6th Cir. 2003) (determining that work history as a hair stylist with a cosmetology license and as a bus driver indicated claimant had "an ability to perform relatively complicated tasks" and no deficit in adaptive functioning); *Foster*, 279 F.3d at 355 (finding that employment as an accounting clerk in a bank and liquor store indicate claimant could perform relatively complicated tasks).

However, a work history limited to unskilled labor—or jobs that "do not emphasize conceptual skills" or "require limited conceptual and communication skills," DSM-V at 34–35— is consistent with the deficits in adaptive functioning described by listing 12.05(C). *See, e.g., Brown*, 948 F.2d at 270 (finding that work as truck driver not inconsistent with mild intellectual

disability where claimant was required to drive and record mileage, hours, and destinations); *Whitehead v. Comm'r of Soc. Sec. Admin.*, No. 13-1231-T, 2014 WL 3952839, at *5 (W.D. Tenn. Aug. 13, 2014) ("[N]either sawing trees or loosening and tightening wheel lug nuts suggests intellectual capacity beyond that found by the psychologists who examined Plaintiff and . . . concluded that he met the diagnostic criteria for mild [intellectual disability]."). Davis' work history consists of unskilled labor, notably as a carpenter's helper and pallet builder. (Tr. 23, 693–94, 702–03.) Furthermore, Davis needed assistance with money management and other ancillary responsibilities. (Tr. 374, 400–01, 403, 721; *see infra.*) The tasks required by these jobs do not suggest adaptive functioning beyond that of someone with a mild intellectual disability.

Next, the Commissioner contends the Magistrate Judge improperly "reweighed the evidence and reached her own conclusions rather than performing the required substantial-evidence analysis" of the ALJ's determination that Davis' activities of daily living do not "support a finding of deficiencies in adaptive functioning." (Doc. No. 32 at 3.) For instance, the Commissioner contends the Magistrate Judge discounted the fact that Davis lives alone by "noting that Plaintiff lives in a trailer on his father's property." (*Id.*)

The Commissioner correctly asserts that the Magistrate Judge, and this Court, may not reweigh the evidence in reviewing the ALJ's decision. Instead, this Court must determine whether the ALJ's decision is supported by substantial evidence, or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks omitted). However, neither the ALJ nor this Court may cherry-pick the record to support its conclusions, but both must "consider the evidence taken as a whole." *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984). For instance, in *Ellis*, an ALJ's determination that the claimant did not have a psychotic disorder was not supported by substantial evidence

where only one piece of evidence contradicted the claimant's diagnosis, the other evidence cited by the ALJ did not confirm or disprove the diagnosis, and all other evidence of record confirmed the diagnosis. *Id.* at 248. Likewise, an ALJ's determination that yesterday was a pleasant day, as evidenced by the fact that the sun was partially visible in the sky, is not supported by substantial evidence if the other evidence shows the presence of storm clouds, downed trees, and hail damage to the undersigned's car. Here, the Magistrate Judge reviewed the entire record and determined the ALJ cherry-picked the record, and her findings as to Davis' activities of daily living were not supported by substantial evidence. Upon review of the record, this Court agrees.

A person with a mild intellectual disability "may function age-appropriately in personal care" but "need some support with complex daily living tasks . . . [such as] grocery shopping, transportation, home and child-care organization, nutritious food preparation, and banking and money management. Recreational skills resemble those of age-mates, although judgment related to well-being and organization around recreation requires support." DSM-V at 34; *accord Brown*, 948 F.2d at 270 (concluding that ability to make change at a grocery store, do laundry, clean his room not inconsistent with finding of listing-level deficits in adaptive functioning). The only evidence of record indicates Davis has deficits in adaptive functioning consistent with a mild intellectual disability. For instance, Davis is able to do laundry, mop, and sweep, but he needs assistance with most chores. (Tr. 401, 720.) Although he lives alone in a trailer on his father's property, his father provided the trailer and visits Davis once a week. (Tr. 15, 399, 401, 720.) Furthermore, Davis apparently has "few friends" and limitations "interacting appropriately with coworkers, supervisors, and the general public." (Tr. 397, 403, 606, 661.) Although Davis is able to count (Tr. 400), he loses money (Tr. 400–01), has trouble making change (Tr. 721), needed someone else to manage his checking account (Tr. 374, 400), and "would need assistance

10

in making appropriate judgments regarding disbursements of funds" (Tr. 403). The fact that Davis can watch television and play cards and video games is also not inconsistent with a finding of deficits in adaptive functioning because these "recreational skills resemble those of age-mates." DSM-V at 34. Upon review of the record, the Court finds no evidence to support the ALJ's conclusion regarding Davis' daily activities. Accordingly, the ALJ's conclusion is not supported by substantial evidence.

In her Report, Magistrate Judge Griffin recommended the ALJ's determination be reversed and benefits awarded. (Doc. No. 30 at 35.) "In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985); *accord Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). As noted above, the Commissioner does not contest that Davis meets all elements of Listing 12.05(C) other than deficits in adaptive functioning that began before age twenty-two. However, the ALJ's finding that Davis did not demonstrate deficits in adaptive functioning is clearly erroneous. Furthermore, the Court concurs with the Magistrate Judge's determination that Davis manifested deficits in adaptive functioning before age twenty-two, as evidenced by Rutledge's test results, and the fact that Davis remains at a third-grade reading level despite enrollment in a school resource program through the ninth grade. (*See* Doc. No. 34 at 30.) The Court finds the record adequate, Davis' proof of intellectual disability strong, and no evidence to the contrary. Accordingly, the award of benefits is appropriate.

## IV. CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report, **GRANTS** Plaintiff's Motion, **REVERSES** the administrative decision, and **REMANDS** this case to the Commissioner for calculation of benefits. The Clerk of the Court is **DIRECTED** to close the case.

It is so ORDERED.

Entered this the 27th day of May, 2015.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT